<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>

File Name: 18a0114n.06

Case No. 17-5885

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Mar 06, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| LARRY MATTHEW SKAGGS, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: KEITH, KETHLEDGE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant-Appellant Larry Matthew Skaggs ("Skaggs") challenges the reasonableness of his revocation sentence after he admittedly violated the terms of his supervised release. In doing so, he alleges that the sentence—a fifteen-month upward departure from the top of the Guideline range—is greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a). For the following reasons, we **AFFIRM**.

**I.**

On October 23, 2006, a federal grand jury charged Skaggs with distributing eight images of child pornography in violation of 18 U.S.C. § 2252(a). Skaggs had communicated online with an undercover officer that he believed to be a fourteen-year-old female and sent her the violative images. On December 21, 2006, Skaggs pleaded guilty to the charge. Under the 2006

Sentencing Guidelines, Skaggs' total offense level was calculated at 34, with a criminal history category of I. Skaggs' resulting Guideline range was 151 to 188 months. The district court departed downward and sentenced Skaggs to sixty months' imprisonment—the mandatory minimum—followed by supervised release for life. Skaggs was released on October 21, 2011.

As part of Skaggs' supervised release, he was not to "possess any device with access to any on-line computer service at any location, including place of employment, without the prior written approval of the probation office." This prohibition included "any Internet Service provider, bulletin board system, or any other public or private network or email system." Skaggs was also required to stay within the judicial district and avoid contact with a convicted felon unless he obtained consent from the court or a probation officer.

For more than five years, Skaggs' supervised release appeared uneventful. He was steadily employed and largely complied with the terms of his release. Then, on May 26, 2017, Skaggs was pulled over for a traffic violation in Georgia. After he consented to a vehicle search, officers found several electronic devices with internet capabilities: an Apple Macbook, Apple iPad, Apple iPhone, and Apple DVD player/recorder with two external media storage devices. Officers also found four pictures of nude girls that were under 18 years of age on one of the devices. Skaggs admitted to police that when "down or depressed" he would "go and search out young girls, preferably teenagers, in beach situations, [or] family situations." RE 19, PageID #75. Skaggs told police that he was in Georgia to spend the weekend with John Ewing ("Ewing"), a federally-convicted sex offender also on supervised release. Ewing told police that Skaggs had also visited him in Chattanooga, Tennessee at an earlier date.

As a result of the stop, Probation Officer Chris Deglow filed a Petition for Warrant on Supervised Release alleging the following violations: (1) leaving the judicial district without

permission; and (2) possessing two cell phones, an iPad, and another computer device. A third

violation—associating with a convicted felon—was added later. Because Deglow had not seen

the pictures—which were also unavailable at the revocation hearing—he did not allege a

violation of the conditions of release relating to either adult or child pornography.[1] Skaggs'

infractions were Class C violations[2] of his supervised release. Combined with a criminal history

category of I, Skaggs' Guideline range was three to nine months in prison, with a statutory

maximum of twenty-four months.

On July 18, 2017, a revocation hearing was held. The record showed that Skaggs had no

previous reported violations of his supervised release. Deglow stated that he previously believed

Skaggs was "doing well" under supervision. RE 19, PageID #81. Skaggs' father testified that

his son could live with him and maintain the same job he had prior to the violation if he were

released. His father also testified that Skaggs had some mental problems.

> The district court ultimately sentenced Skaggs to the statutory maximum, stating:
>
> Well, there are a number of factors that come into play here. I suppose, as much as any case I have had before me with regard to violations of terms of supervised release, this case underscores the difficulty with monitoring someone's behavior. The probation officers do their best, but it's extremely difficult to make someone toe the line.
>
> I guess the part that concerns me the most is Mr. Deglow seemed to be under the impression that Mr. Skaggs was doing a very good job of complying with the terms of his supervision when, in fact, at least on May 26th, 2017, Mr. Skaggs threw that to the wind. He appears to have had four prohibited digital devices. He was traveling out of the district. Whether he had done that before or not, I'm not sure I have got enough real evidence to determine one way or the other. But at least on this one occasion he left the district to meet up with another convicted sex offender.

---

[1] The Government now alleges that Georgia authorities have indicated they will be filing child pornography charges against Skaggs based on the photographs found. (Appellee's Br. at 16 (citing RE 19, PageID #74-75).)

[2] *See* U.S.S.G. § 7B1.1(a)(3) ("conduct constituting (A) federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.").

So the level of deception and the avoidance of detection that Mr. Skaggs was able to accomplish while Mr. Deglow thought he was doing a great job is of extreme concern to the Court.

The other factor -- two more factors that are problematic in this instance basically go back to the original offense, which did involve at least an attempt to contact a child for the purpose of sexual activity.

Now, the initial guideline range for that offense was 151 to 181 months, and yet Mr. Skaggs was sentenced to 60 months, less than half -- way less than half of the guideline range on that initial sentence.

So those factors lead me to believe that what's appropriate here is to revoke the supervision and to send Mr. Skaggs back to prison for 24 months, which I understand that's the maximum that I can do. In my judgment that is what's appropriate.

So having considered the guidelines of 18 U.S.C. 3553(a), it's the judgment of the Court that the life term of supervised release that was imposed on June 8, 2007, which began on October 21, 2011, is revoked, and the defendant is committed to the custody of the Bureau of Prisons for a term of 24 months with a term of life supervised release to follow.

\*     \*     \*     \*     \*     \*

The policy statements in Chapter 7 of the U.S. Sentencing Commission Advisory Guidelines Manual reflect that this defendant's violation conduct constitutes Grade C violations. The category -- the criminal history category determined at the time of the original sentence was I. Therefore, the advisory guideline range of imprisonment applicable upon revocation in this case is three to nine months based on the revocation table suggested by the U.S. Sentencing Commission.

Title 18 U.S.C. 3583(e)(3) authorizes a term of imprisonment of no more than two years, and the Guideline Manual 7B1.4 in commentary application note 3 states, "In the case of a Grade C violation that is associated with a high risk of new felonious conduct, an upward departure may be warranted."

As to these violations, Mr. Skaggs had planned to take this trip. He was in possession of four prohibited digital devices. He was traveling out of the district without the required permission to visit another convicted sex offender.

And according to application note 4, the original sentence -- because the original sentence was the result of a downward departure, an upward departure is warranted. In regards to that, at the original sentencing, as I mentioned, Mr. Skaggs' guideline imprisonment range was from 151 to 181 months, but he was sentenced to only 60 months of imprisonment.

- 4 -

In looking at the purposes of 3553(a) and its direction that the Court impose a sentence that's sufficient, but not greater than necessary, to accomplish its purposes, it seems in this instance that in order to protect the community from Mr. Skaggs -- and he appears to be -- at least so far he's demonstrated that he's incapable of complying with the terms of supervised release, that he's deceptive, he's sneaky, and although the probation officer thought that he was doing a great job, that simply was not the case.

In order to deter his conduct and to punish him for this trip that he made, I believe that a term of two years is necessary, and I believe that term of imprisonment complies with the purposes set forth in Section 3553(a)(2).

**II.**

Under 18 U.S.C. § 3583, the court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release" if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). We review revocation sentences under the deferential abuse of discretion standard, asking whether the sentence is both procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court abuses its discretion as to procedural reasonableness if it commits a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*

In reviewing for substantive reasonableness, we consider the sentence imposed in light of "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* A district court abuses its discretion in this regard when it chooses the sentence arbitrarily, bases it on impermissible factors, fails to consider pertinent § 3553(a) factors, or

gives an unreasonable amount of weight to any one factor. *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

## A.

Skaggs makes no argument that his revocation sentence was procedurally unreasonable, instead arguing only that that his sentence is substantively unreasonable because it is greater than necessary to comply with § 3553(a) and without compelling justification for upward departure. However, "we typically . . . do not analyze [a sentence's] substantive reasonableness unless the sentence is 'procedurally sound.'" *United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017) (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)). Because it is readily apparent that the district court did not commit any procedural errors, treat the Guidelines as mandatory, fail to consider § 3553(a) factors, or make any clearly erroneous factual findings, we move to the substantive reasonableness of Skaggs' sentence.

Skaggs argues that by nearly tripling the high end of the Guideline range and applying the statutory maximum, the district court applied a sentence that is greater than necessary to comply with the sentencing objectives of § 3553(a). In reviewing for substantive reasonableness, the record must contain sufficient evidence to demonstrate that the district court considered the relevant § 3553(a) factors. *United States v. Yopp*, 453 F.3d 770, 774 (6th Cir. 2006). "The district court 'need not explicitly reference each of the § 3553(a) factors' in its sentencing determination; but there must be 'sufficient evidence in the record to affirmatively demonstrate the court's consideration of them.'" *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (quoting *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006)). However, "if a sentence is outside the advisory range, the court is required by statute to state 'the *specific reason* for the imposition of a sentence different from that described [in the applicable

Guidelines or policy statements].'" *Id.* at 205 (quoting 18 U.S.C. § 3553(c)(2)) (emphasis in original). A reviewing court "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 41. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

Here, the district court accurately determined that the Guidelines recommended a sentencing range of three to nine months. Likewise, the record demonstrates that the district court detailed the nature and circumstances of Skaggs' violations, considered the § 3553(a) factors, addressed Skaggs' argument for a lower sentence, and explained the reasons for imposing a twenty-four-month sentence. The district court noted first that Skaggs violated his supervised release in at least three ways, none of which were apparent to his probation officer; the court found that the undetected nature of the violations underscored the danger of allowing Skaggs to remain on supervised release. Second, while the court stated it was not established that the devices contained illegal content, they did contain content related to Skaggs' original conviction. Moreover, it was Skaggs' possession of the devices themselves, not the content found on them, that violated his supervised release and served as the basis for the court's sentence. Third, the court noted the conduct related to the original offense and the fact that Skaggs was so blatantly violating multiple terms of his supervised release—unbeknownst to his probation officer—adequately exhibited a high likelihood for recidivism and a return to his previous felonious conduct. Finally, the district court also recognized both the seriousness of Skaggs' original offense and the massive downward departure he received in his original

sentence: sixty months' imprisonment, rather than the 151 to 181 months' from the applicable Guideline range.

These pertinent points in the record show a substantively reasonable sentence. Nonetheless, Skaggs specifically contends that: (1) his use of deception to fool his probation officer is routine in revocation proceedings; (2) it was not proven that the electronic devices contained child pornography; and (3) the facts were insufficient to support the conclusion that there was a "high risk" that he would engage in "new felonious conduct." These contentions do not prove a substantively unreasonable sentence.

First, though deception may be common—in that those violating their supervised release do not announce as much or self-report violations—the judge voiced concern about the blatancy and breadth of the violations that were unknown to the parole officer. Second, though Skaggs contends that there is no evidence that he committed the same crime again, he did violate his supervised release, the terms of which are directly related to his original sentence and tailored to ensure that he is unable return to his original criminal behavior. The district court was faced with a defendant that committed heinous computer crimes and was now travelling, without permission, to another jurisdiction, with multiple prohibited devices, to stay with a fellow sex offender on supervised release. Indeed, U.S.S.G. § 7B1.4, Commentary Application Note 3, notes that "[i]n the case of a Grade C violation that is associated with a high risk of new felonious conduct . . . an upward departure is warranted," giving the example of a defendant under supervision for conviction of criminal sexual abuse who loiters near a schoolyard. This example is wholly analogous to Skaggs' conduct—with or without considering the content on the devices—and illustrates a reasonable application of the Guidelines. Though Skaggs states that the "digital devices themselves do not present 'a high risk of new felonious conduct'"

(Appellee's Br. at 23), the terms of his supervised release specifically contemplate that, in *his* hands, they do. Third, Skaggs' argument that Deglow did not elaborate on his opinion that his alarm level was "extremely high" is meritless. It is apparent why—he did not need to; the district court prefaced its question by noting the fact of unauthorized travel and the presence of the pictures found on the device.

Though Skaggs also cites a multitude of cases in which district courts departed from the Guideline range on revocation as examples of more egregious conduct, none are on point. Not only do they feature wholly different categories of crime, but Skaggs does not provide a single case where analogous conduct failed to result in an upward departure.

In the end, the district court provided sufficiently compelling justifications for its departure from the Guideline recommendation. The district court explained how the twenty-four-month sentence it imposed was necessary to serve the sentencing purposes in § 3553(a), including deterrence and just punishment. Moreover, the fundamental principle underlying supervised-release sentencing is that "the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G § 7A1.3(b). By departing upward from the advisory range, the district court sought to incorporate Skaggs' breach of trust resulting from the multiple ways in which he breached the terms of his supervisory release, while also acknowledging the seriousness of his original conviction and leniency of the sentence he previously received. *See United States v. Marks*, No. 17-3107, 2017 WL 6048879, at *4-5 (6th Cir. Dec. 7, 2017) (upholding sentence that exceeded the high end of the Guideline range by a factor of almost three because, in part, the district court was to consider the seriousness of the original offense). Skaggs also argues that the district court's statement that, given the downward

departure in the original sentence, an upward departure "is warranted" suggests that the court may have improperly reviewed such an enhancement as "mandatory." (Appellee's Br. at 15.) This contention is without merit; indeed, in making it, Skaggs disingenuously ignores the fact that, immediately before the quoted statement, the district court restated the very part of § 7B1.1 that Skaggs argues was misapprehended, verbatim. In light of the district court's consideration and explanation of those factors, as well as our deferential standard of review, Skaggs' sentence was substantively reasonable.

## III.

Skaggs' above-Guidelines sentence is substantively reasonable because the district court adequately explained that it was based on the § 3553(a) factors, including respect for the law, deterrence, and just punishment. The court sufficiently justified its upward variance by observing the multitude of ways Skaggs violated his supervised release, which forecast a high likelihood of felonious conduct, and the seriousness of the original offense and downward departure that followed. We AFFIRM the district court's revocation sentence.